

1  Gregory Michael MacGregor (SBN: 61970)
   Deborah A. Berthel (SBN: 125911)
2  *MACGREGOR & BERTHEL*
   21700 Oxnard Street, Suite 1590
3  Woodland Hills, California 91367
   Telephone: (818) 710-3666
4

5  Attorneys for Defendant
   Allstate Insurance Company
6

____ Priority
_X__ Send
____ Clsd
____ Enter
____ JS-5/JS-6
____ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT

SEP 13 2000

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  JOSEPH GLAVIANO and JODEANNA        )   Docket No. CV-99-04484 RSWL (Ex)
    GLAVIANO,                           )
12                                      )
                  Plaintiffs,           )   DEFENDANT ALLSTATE
13                                      )   INSURANCE COMPANY'S
          vs.                           )   STATEMENT OF
14                                      )   UNCONTROVERTED FACTS AND
    ALLSTATE INSURANCE COMPANY; and     )   CONCLUSIONS OF LAW
15  DOES 1 through 30, inclusive,       )
                                        )   DATE:      September 11, 2000
16                Defendants.           )   TIME:      9:00 a.m.
                                        )   CTRM:      21
17  _____ )

18                                          Trial Date:  November 28, 2000

19                                          [Notice of Motion and Motion for
                                            Summary Judgment or, In the
20                                          Alternative Summary Adjudication of
                                            Issues; Memorandum of Points and
21                                          Authorities; Declarations of R. Timothy
                                            O'Connor, Walter McCurley and
22                                          Stephen Quarles; and Appendix of
                                            Exhibits Filed Concurrently Herewith]
23

24  ///

25  ///

26  ///

27  ///

28  ///

ENTERED ON ICMS

SEP 14 2000

CV

(50)

- 1 -

After consideration of the papers in support of and in opposition to Defendant Allstate Insurance Company's ("Allstate") Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Issues and the oral argument of counsel, the Court determines that the following facts have been established as,

**UNCONTROVERTED FACTS**

THE FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANT ALLSTATE INSURANCE COMPANY: Plaintiffs Cannot Establish the Elements of a Prima Facie Claim Such That the Claims Have No Merit — Issue 1

THE SECOND CAUSES OF ACTION FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT ALLSTATE INSURANCE COMPANY: Plaintiffs Cannot Establish the Elements of a Prima Facie Claim Such That the Claims Have No Merit — Issue 2

FACTS WHICH DEFENDANT CONTENDS ARE UNCONTROVERTED

| Undisputed Material Facts | Supporting Evidence |
|---|---|
| 1. Plaintiff obtained an AP2 Allstate Deluxe Homeowners Policy, Policy No. 037395661 for their property at 846 & 848 N. Orange Grove, Los Angeles, California 90046, and the policy was in force and effect on April 28, 1998. | *See*, Certified Copy of Policy ("Policy") ALL-UW 001-088, Exh. "B" to the Appendix of Exhibits filed concurrently herewith (all exhibits referenced herein are attached to the Appendix of Exhibits). |
| 2. The Policy provides at pages 8-9:        *"Losses We Do Not Cover Under Coverages A and B:* | *See*, Certified Copy of Policy ("Policy") ALL-UW 051, p.71, Exh. "B." |

- 2 -

1   We do not cover loss to the property

2   described in

3   Coverage A - Dwelling Protection or

4   Coverage B - Other Structures

5   Protection

6   consisting of or caused by:

7   1.   Flood, including, but not

8        limited to surface water,

9        waves, tidal water or

10       overflow of any body of

11       water, or spray from any of

12       these, whether or not driven

13       by wind.

14

15  4.   Water or any other substance

16       on or below the surface of the

17       ground, *regardless of it*

18       *source.* [emphasis added]

19       This includes water or any

20       other substance which exerts

21       pressure on, or flows, seeps

22       or leaks through any part of

23       the residence premises.

24

25  3.   The Policy provides:          *See*, Certified Copy of Policy ("Policy")

26       "*Losses We Do Not Cover Under*     ALL-UW 052, p. 71-72, Exh. "B."

27       *Coverages A and B:*

28       We do not cover loss to the property

- 3 -

1    described in

2    Coverage A - Dwelling Protection or

3    Coverage B - Other Structures

4    Protection

5    consisting of or caused by:

6          12.    Collapse, except as

7                 specifically provided in

8                 **Section I - Additional**

9                 **Protection** under item 11,

10                 "Collapse."

11

12  4.    The Policy provides:          *See*, Certified Copy of Policy ("Policy")

13    *"Losses We Do Not Cover Under*    ALL-UW 052, p. 71-72, Exh. "B."

14    *Coverages A and B:*

15    We do not cover loss to the property

16    described in

17    Coverage A - Dwelling Protection or

18    Coverage B - Other Structures

19    Protection

20    consisting of or caused by:

21         13.  Soil conditions, including but

22              not limited to, corrosive

23              action, chemicals,

24              compounds, elements,

25              suspensions, crystal

26              formations or gels in the soil.

27  ///

28  ///

Allstate's Statement of Uncontroverted Facts and Conclusions of Law in Support of its SJM

| | | | |
|---|---|---|---|
| 1 | 5. | The Policy provides: | *See*, Certified Copy of Policy ("Policy") |
| 2 | | 11. Collapse | ALL-UW 062, p. 82, Exh. "B." |

3    We will cover:

4    a)    the entire collapse of a

5    covered    building

6    structure;

7    b)    the entire collapse of

8    part of a covered

9    building structure; and

10   c)    direct physical loss to

11   covered property

12   caused by (a) or (b)

13   above.

14        For coverage to apply,

15   the collapse of a **building**

16   **structure** specified in (a) or

17   (b) above must be a sudden

18   and accidental direct physical

19   loss caused by one or more of

20   the following:

21   a)    a loss we cover under

22   Section I, coverage C

23   -  Personal Property

24   Protection;

25   b)    hidden decay of the

26   **building structure;**

27   c)    hidden damage to the

28   **building    structure**

MACGREGOR & BERTHEL

Allstate's Statement of Uncontroverted Facts and Conclusions of Law in Support of its SJM

|    |    |    |
|----|----|----|
| 1 |    | caused by insects or |
| 2 |    | vermin; |
| 3 | d) | weight of persons, |
| 4 |    | animals, equipment or |
| 5 |    | contents; |
| 6 | e) | weight of rain or snow |
| 7 |    | which collects on a |
| 8 |    | roof; |
| 9 | f) | defective methods or |
| 10 |   | materials used in |
| 11 |   | construction, repair, |
| 12 |   | remodeling or |
| 13 |   | renovation, but only if |
| 14 |   | the collapse occurs in |
| 15 |   | the course of such |
| 16 |   | construction, repair, |
| 17 |   | remodeling or |
| 18 |   | renovation. |

19  Collapse does not include settling,
20  cracking, shrinking, bulging or
21  expansion.
22  This protection does not change the
23  limit of liability that applies to the
24  covered property.
25

26  6.    The Policy provides:                    *See*, Certified Copy of Policy ("Policy")
27         *"Losses We Do Not Cover*         ALL-UW 052, p. 71-72, Exh. "B."
28         *Under Coverages A and B:*

- 6 -

1      We do not cover loss to the property

2      described in

3      Coverage A - Dwelling Protection or

4      Coverage   B   -   Other   Structures

5      Protection

6      consisting of or caused by:

7            * * *

8      In addition, we do not cover loss

9      consisting of or caused by any of the

10      following:

11            * * *

12     15. a) wear   and   tear, aging,

13            marring,   scratching,

14            deterioration, inherent vice,

15            or latent defect.

16

17  7.    The Policy provides:          *See*, Certified Copy of Policy ("Policy")

18         *"Losses We Do Not Cover*    ALL-UW 052, p. 71-72, Exh. "B."

19         *Under Coverages A and B:*

20      We do not cover loss to the property

21      described in

22      Coverage A - Dwelling Protection or

23      Coverage   B   -   Other   Structures

24      Protection

25      consisting of or caused by:

26            * * *

27      In addition, we do not cover loss

28      consisting of or caused by any of the

MACGREGOR &
BERTHEL

Allstate's Statement of Uncontroverted Facts and Conclusions of Law in Support of its SJM

1 | following:

2 | * * *

3 | 15. d) Rust or other corrosion,

4 | *mold*, [emphasis added] wet

5 | or dry rot."

6 |

7 | 8. Plaintiffs were aware, even before

8 | reporting it to Allstate, that fungus

9 | caused the damage to the floor.

*See*, Mr. De La Cruz Deposition Testimony taken July 20, 2000, 82:7-14, 82:17-20, 83:1-7, Exh. "J;" Amended Response to First Set of Request for Admissions Propounded to Plaintiffs Joseph and Jodeanna Glaviano by Defendant Allstate Insurance Company #16-24, served on May 12, 2000, Exh. "M;" and Note dated April 20, 1998, produced by Mr. De La Cruz at his deposition, Exh. "N."



9. In 1996, Plaintiff filed an insurance claim with their prior insurer, 20th Century Insurance after their tenant (who lived in Unit 848 of the Property) advised them that the floors (including the same area of the wood floor affected by this loss) appeared warped.

*See*, Jodeanna Glaviano Deposition Testimony taken May 15, 2000, 10:13-11:20, 27:22-28:16, Exh. "K," and records produced by 20th Century in response to Defendant Allstate's subpoena issued January 27, 2000, Exh. "L," pp. 294, 296, 300, 306-309 (21st 042, 044, 048, 054-57).

26 | / / /

27 | / / /

28 | / / /

10.  Every six months to one year following the 20th Century claim, Plaintiffs had a problem with their floor and Mr. Glaviano made repairs to the floor from the resulting damage.

*See*, Joseph Glaviano Deposition Testimony taken May 17, 2000, 24:2-10, 24:15-20, Exh. "O."

11.  Plaintiffs' expert, Mr. De La Cruz's telephone note from the initial call from Mrs. Glaviano on April 20, 1998, prior to notice to Allstate of the claim, states "have repaired floor twice and is back again and may be fungus."

*See*, Note dated April 20, 1998, produced by Mr. De La Cruz at his deposition, Exh. "N."

12.  Notice of the claim was first received by the Allstate insurance agent, Alain J. Welty, on May 4, 1998 and on the same day it was received by the Allstate National Claim Service Center at 8:41 p.m., Eastern Time (EDT).

*See*, Allstate Computer Claims Diary Entry for May 4, 1998, p. 116, ALL 00008, Exh. "C."

13.  The claim was reported to Allstate by telephone by Jodeanna Glaviano who advised Allstate representative that her home was "infested with Meruliporia Incrassata" and that there

*See*, Allstate Computer Claims Diary Entry for May 4, 1998, p. 116, ALL 00008, Exh. "C."

- 9 -

1    was "damage to the structure."

2

3    14.   Plaintiffs and their tenant observed          *See*,   Jodeanna   Glaviano   Deposition

4          "warping and soft spots" on the             Testimony taken May 15, 2000, 31:5-18,

5          wood floor on or about March, 1998,          33:5-12,   33:18-22,   34:21-35:12,   35:19-

6          which is over one month before they          36:16, Exh. "K."

7          even reported the loss to Allstate.

8

9    15.   Warping is an indicator of the              *See*, Quarles Report, p. 350-351, ¶4, Exh.

10         presence of dry-rot.                          "P."

11

12   16.   Plaintiff's expert has admitted that         *See*,   Jodeanna   Glaviano   Deposition

13         Plaintiff characterized the loss as dry-     Testimony taken May 15, 2000, 25:24-

14         rot when she reported it to him.             26:15, 45:2-4, 45:17-46:1, 49:2-8, Exh.

15                                                      "K;" De La Cruz Deposition Testimony

16                                                      taken July 20, 2000, 109:1-110:4, 112:25-

17                                                      113:9, 116:25-117:10, 125:7-126:8 Exh "J;"

18                                                      De La Cruz Report, Exh. "Q'" (Bates No.

19                                                      ALL 00093).

20

21   17.   Plaintiffs' expert has characterized        *See*,   Jodeanna   Glaviano   Deposition

22         the loss as caused by poria                  Testimony taken May 15, 2000, 25:24-

23                                                      26:15, 45:2-4, 45:17-46:1, 49:2-8, Exh.

24                                                      "K;" De La Cruz Deposition Testimony

25                                                      taken July 20, 2000, 109:1-110:4, 112:25-

26   ///                                               113:9, 116:25-117:10, 125:7-126:8 Exh "J;"

27   ///                                               De La Cruz Report, Exh. "Q'" (Bates No.

28   ///                                               ALL 00093).

- 10 -

18. During Adjuster McCurley's inspection, Plaintiffs provided Mr. McCurley with a termite report from their expert, Luis De La Cruz, which attributed the cause of the damage to Poria. Mrs. Glaviano also advised Mr. McCurley that her expert had advised her that the fungus possible originated in the dirt.

*See*, Allstate Computer Claims Diary Entry for May 13, 1998, ALL 00007, Exh. "C," and Mr. De La Cruz Report dated April 28, 1998, ALL 00092-95, Exh. "Q."

19. Allstate retained Engineer David Chavez who inspected the property on May 21, 1998.

*See*, Allstate Computer Claims Diary Entry for May 13, 1998, ALL 00006, Exh. "C," and Chavez Report, p. 119, ALL 00060, Exh. "D."

20. In preparing his July 16, 1998 report, Engineer Chavez consulted with Poria expert Dr. Ian Ross of the professor of Biology and Mycology at the University of California, Santa Barbara and incorporated opinions by Dr. Ross into his report.

*See*, Chavez Report, p. 129-130, ALL 00070-71, Exh. "D."

21. Chavez's report notes the presence of efflorescence at the southwesterly portion of the Property and at the north, south and west footings of the westerly portion of the Property.

*See*, Chavez Report, p. 124-125, ALL 00065-66, Exh. "D."

- 11 -

*MACGREGOR & BERTHEL*

22.   In his report, Chavez noted various water sources:

*See*, Chavez Report, p. 125-127, ALL 00066-68, Exh. "D."

"North (Side) Yard - The north side yard contains the concrete walkway which at the base of the building abuts against what appears to be a concrete curb. A separation exists at the junction of the walkway and the fireplace on the west side that ranges in width up to approximately ½" (Photo #8). At the time of this observation, moss was growing on the curb at the base of the north footing on the westerly side between the fireplace and the front wall (Photo #9).

Yard runoff can migrate into the soil adjacent to the north footing through the separation at the junction of the concrete walkway and the fireplace and the walkway and the concrete curb.

- 12 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**West (Front) Yard** - Three downspouts discharge roof runoff along the west wall. Beginning on the north side, the first downspout is located immediately to the north of the entry walk and above the raised stone planter. The downspout has a horizontal extension which continues over the planter, discharging runoff onto the lawn adjacent to the planter. The second downspout is immediately to the south of the entry stairs and collects runoff from the aluminum awning over the entry porch, discharging directly into the raised planter that abuts against the southerly portion of the building. The third downspout is located in the southwest corner and a horizontal extension extends over the planter, discharging runoff onto the concrete driveway (Photo #10).

- 13 -

1   According to the insured, the
2   extensions on the north and
3   south downspouts which
4   bypass the raised planters and
5   the installation of the
6   aluminum awning with its
7   downspout, are part of the
8   drainage control measures
9   which were implemented by
10  the insureds, based on
11  recommendations by others
12  over approximately the last
13  two years.

15  Both rain water and irrigation
16  water can pond in the planter
17  that abuts against the north
18  side of the residence."

20  23.  Chavez opined:

21      "According to the De La
22      Cruz report, the fungus has
23      been identified as Meruliporia
24      (Poria) incrassata. The water
25      source for the rhizomorphs
26      that nourish the fungus could
27      be the raised planters that
28      abut against the front of the

See, Chavez Report, p. 130, ALL 00071, Exh. "D."

- 14 -

1              residence or moisture that

2              migrates through footings

3              from yard areas."

4

5    24.    Chavez opined:              *See*, Chavez Report, p. 121-122, ALL

6              "Approximately two years    00062-63, Exh. "D."

7              ago they [the insureds]

8              noticed damage to the wood

9              flooring in their unit, 846. It

10             was determined that fungal

11             infestation was causing

12             damage to the floor framing

13             and subsequently the flooring.

14             Since that time, various

15             individuals have presented

16             different concepts on why the

17             fungal infestation is taking

18             place and subsequently the

19             insureds had the structure re-

20             roofed, the plumbing system

21             checked (which was found to

22             be leak free), and downspouts

23             on the front wall so they

24             discharge away from the

25             planters and footings and

26             installation of an aluminum

27             awning over the entry porch.

28             According to the insured, the

- 15 -

1   hardwood flooring on the
2   west side of both unit 846 and
3   unit 848 has been repaired at
4   least twice in the last two
5   years.   In addition, floor
6   framing members such as
7   joists and floor sheathing have
8   been removed and replaced,
9   and wall framing members
10  have been repaired in unit
11  846."

12

13  25.   In his report, Chavez opined:          *See*, Chavez Report, p. 124-125, ALL
14          "Adjacent to the west footing        00065-66, Exh. "D."
15          of unit 848 are several new
16          2x6 floor joists used to
17          reinforce decayed floor joists.
18          One of the floor joists
19          adjacent to the west footing
20          apparently was so deteriorated
21          that its southerly end has been
22          removed.
23                  *   *   *
24          In the westerly portion of the
25          underfloor area at the base of
26          the north footing, the south
27          footing and periodically the
28          west footing, is efflorescence,

- 16 -

1  indicating that moisture
2  migrates through the
3  foundation (Photos #2, #3,
4  #4, #5 and #7)."
5

6  26.  Mr. McCurley reviewed and relied     *See,* Allstate Computer Claims Diary Entry
7       upon the report of engineer David    for July 24, 1998, ALL 00005-6, Exh. "C,"
8       Chavez.                              and Walter McCurley Deposition Testimony
9                                            taken June 29, 2000, 31:10-16, 31:21-25,
10                                           41:2-4, 41:14-16, 42:15-23, 50:20-24, 51:8-
11                                           13, 54:24-55:6, 56:5-10, Exh. "E."
12

13  27.  McCurley noted that Engineer        *See,* Allstate Computer Claims Diary Entry
14       Chavez reported the presence of     for July 24, 1998, ALL 00005-6, Exh. "C,"
15       poria, characterized it as originating  and Walter McCurley Deposition Testimony
16       in the soil and advised that it required  taken June 29, 2000, 40:21-41:1, 44:23-
17       the presence of water to thrive.    45:1, 46:5-6, 46:9-11, Exh. "E."
18

19  28.  The fungus, poria, requires a       *See,* Mr. De La Cruz Deposition Testimony
20       sufficient water source and soil to  taken July 20, 2000, 99:7-100:24, 101:7-12,
21       thrive.                             121:12-15, 122:2-127:20, 133:25-134:14,
22                                           152:18-25, 153:1-16, 154:19-23, 155:11-
23                                           156:14, 158:23-25, Exh. "J;" De La Cruz
24                                           Rule 26 Report dated April 30, 2000, p. 1,2
25                                           Exh. "R," and Quarles Decl., ¶ 6.
26  / / /
27  / / /
28  / / /

*MacGregor &*
*Berthel*

Allstate's Statement of Uncontroverted Facts and Conclusions of Law in Support of its SJM

| | | |
|---|---|---|
| 1 | 29. | McCurley noted that Engineer Chavez's Report concluded that "poria causes dry-rot." | *See*, Allstate Computer Claims Diary Entry for July 24, 1998, p. 114 (*Entry dated 7/24/98*), ALL 00006, Exh. "C." |
| 5 | 30. | Poria is a dry-rot fungus and the resulting damage it causes to wood is known as "dry-rot." | *See*, Mr. De La Cruz Deposition Testimony taken July 20, 2000, 19:13-17, Exh. "J," and De La Cruz Rule 26 Report dated April 30, 2000, p. 3, Exh. "R." Quarles Dec., ¶5; Quarles Report, Exh. "P," p. 350, ¶ 2. |
| 12 | 31. | Mr. McCurley summarized Mr. Chavez's report in a July 24, 1998, claims diary entry which states: | *See*, Allstate Computer Claims Diary Entry for July 24, 1998, ALL 00006, Exh. "C," and Walter McCurley deposition Testimony taken June 29, 2000, 54:24-55:6, Exh. "E." |

"Review of the engineering report appears to state that the westerly [sic] 10' of the south footing, the entire west footing and approximately the westerly 10' of the north footing have varying degrees of decay of the wood framing. The report also states the footing display efflorescence. There are signs of efflorescence indicating that moisture migrates through the foundation.          Drainage

- 18 -

1 indicates one downspout
2 discharging directly into a
3 raised planter. Report states
4 both rain water and irrigation
5 water can pond in the planter
6 that is located on the north
7 side of the residence. Rain
8 water and irrigation water can
9 pond in the raised planter on
10 the south side of the
11 residence. The research
12 states the infection appears to
13 be connected to the earth fill
14 of the front porch and the
15 exterior soil through
16 separation between the
17 stucco/masonry veneer and
18 the foundation. *It also states*
19 *the fungus nourishes itself*
20 *through a root like tube*
21 *called a rhizomorph that*
22 *allows it to syhon [sic] water*
23 *even when the wood it infects*
24 *is protected from moisture.*
25 The fungus is called poria and
26 it utilizes the rhizomorphs as
27 its water supply. *The poria*
28 *causes dry rot.* The

Allstate's Statement of Uncontroverted Facts and Conclusions of Law in Support of its SJM

1   engineers conclusion states
2   *the water source for the*
3   *rhizomorphs that nourish the*
4   *fungus could be the raised*
5   *planters that abut against the*
6   *front of the residence or*
7   *moisture that migrates*
8   *through the footings.*"
9   [Emphasis added.]

10

11  32.   Allstate file manager Ben Baltierrez          *See,* Allstate Computer Claims Diary Entry
12        agreed with the reasons cited by Mr.          for July 24, 1998, ALL 00005, Exh. "C."
13        McCurley for denying the claim and
14        cited additional exclusions which
15        included deterioration (exclusion 15a)
16        and soil conditions (exclusion 13).

17

18  33.   Plaintiffs have admitted that the           *See,* Mr. De La Cruz Deposition Testimony
19        damage to the wood flooring and            taken July 20, 2000, 82:7-14, 82:17-20,
20        framing which occurred in 1996 may         83:1-7, Exh. "J;" Amended Response to
21        have been caused by poria               First Set of Request for Admissions
22        infestation.                                Propounded to Plaintiffs Joseph and
23                                                    Jodeanna Glaviano by Defendant Allstate
24                                                    Insurance Company #16-24, served on May
25                                                    12, 2000, Exh. "M;" and Note dated April
26  / / /                                             20, 1998, produced by Mr. De La Cruz at
27  / / /                                             his deposition, Exh. "N."
28  / / /

- 20 -

MACGREGOR &
BERTHEL

| | | |
|---|---|---|
| 1 | 34. | On May 6, 1998, adjuster Walter | *See*, Allstate Computer Claims Diary Entry |
| 2 | | McCurley telephoned Mrs. Glaviano | for May 6, 1998, p. 115, ALL 00007, Exh. |
| 3 | | and scheduled an appointment for | "C." |
| 4 | | May 13, 1998, the date he inspected | |
| 5 | | the Glaviano's property. | |
| 6 | | | |
| 7 | 35. | During the May 13, 1998 inspection, | *See*, Allstate Computer Claims Diary Entry |
| 8 | | Adjuster McCurley interviewed Mrs. | for May 13, 1998, p. 114, ALL 00006, Exh. |
| 9 | | Glaviano, inspected the damage, | "C." |
| 10 | | advised Mrs. Glaviano that he was | |
| 11 | | "unsure of coverage" and that he | |
| 12 | | would hire David Chavez | |
| 13 | | Engineering to determine what the | |
| 14 | | problem is, how it originated, the | |
| 15 | | extent of the damage and how to | |
| 16 | | eradicate it. | |
| 17 | | | |
| 18 | 36. | On August 10, 1998, Mr. McCurley | *See*, Allstate Computer Claims Diary Entry |
| 19 | | verbally informed Mrs. Glaviano that | for August 10, 1998, ALL 00004, Exh. "C," |
| 20 | | the loss was not covered by the | and Allstate Claims File Denial Letter dated |
| 21 | | policy based upon the conclusions | August 11, 1998, ALL 00032-34, Exh. "F." |
| 22 | | reached by Mr. Chavez in his report. | |
| 23 | | The next day, Mr. McCurley | |
| 24 | | confirmed this denial in writing by | |
| 25 | | directing a denial letter dated August | |
| 26 | | 11, 1998, to the Glavianos citing | |
| 27 | | exclusion numbers 1, 4, 13, 15, and | |
| 28 | | 23. | |

*MacGregor &*
*Berthel*

Allstate's Statement of Uncontroverted Facts and Conclusions of Law in Support of its SJM

| 1 | 37. | On August 11, 1998, Adjuster McCurley directed a denial letter to the Glavianos citing exclusions numbers 1, 4, 13, 15 and 23. | *See*, Allstate Claims File Denial Letter dated August 11, 1998, ALL 00032-34, Exh. "F." |

| 6 | 38. | Mr. McCurley informed Mrs. Glaviano that "since she is aware of a condition which could cause collapse that we will not cover any collapse that occurs as a result of this condition." | *See*, Allstate Computer Claims Diary, p. 112, ALL 00004, Exh. "C;" Allstate Claims File Denial Letter dated August 11, 1998, ALL 00032-34, Exh. "F;" and Allstate Claims File Letter from Walter McCurley to Mr. & Mrs. Joseph Glaviano dated October 27, 1998, p. 182, ALL 00021, Exh. "I." |

| 14 | 39. | Allstate received an undated letter on September 24, 1998, from the Glavianos wanting a "more detailed written explanation" of the denial and on October 3, 1998, Mr. McCurley addressed a letter to the Glavianos in response to their request. | *See*, Allstate Claims File Letter from Walter McCurley to Joseph Glaviano dated October 3, 1998, ALL 00025-26, Exh. "G." |

| 22 | 40. | Mrs. Glaviano responded to Adjuster McCurley's October 3, 1998 letter by way of her October 13, 1998 letter to which adjuster McCurley responded in writing on October 27, 1998 by directing a letter to her informing her that the Collapse provision was | *See*, Allstate Claims File Letter from Jody Glaviano to Walter McCurley dated October 13, 1998, ALL 00022-23, Exh. "H," and Allstate Claims File Letter from Walter McCurley to Mr. & Mrs. Joseph Glaviano dated October 27, 1998, ALL 00019-21, Exh. "I." |

- 22 -

1 | inapplicable to this loss because the
2 | ~~damage was not "sudden" nor was it~~
3 | ~~"hidden" as the collapse provision~~
4 | ~~requires.~~ exception to the collapse provision is limited by the
5 | "dry rot" exclusion.

6 | 41. | Despite the damage observed by | *See,* Jodeanna Glaviano Deposition
7 | | Plaintiffs' tenant, she refused to move | Testimony taken May 15, 2000, 14:18-25,
8 | | out until she was evicted in April, | 15:6-17, 92:13-22, Exh. "K."
9 | | 2000.

10 |

11 | 42. | On October 27, 1998, Mr. McCurley | *See,* Allstate Claims File Letter from Walter
12 | | sent Plaintiffs a letter responding to | McCurley to Mr. & Mrs. Joseph Glaviano
13 | | their letter of October 13th, showing | dated October 27, 1998, ALL 00019-21,
14 | | he considered and tried to explain | Exh. "I."
15 | | what exclusions were cited.

16 |
17 |

18 | **SIXTEENTH AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE**
19 | **COMPLAINT: Plaintiffs Fail to State Claims Sufficient to Give Rise to an Award of Punitive**
20 | **Damages — Issue 3**
21 | Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.
22 | 1 - 42 and the related supporting evidence.
23 | **FIRST AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE COMPLAINT:**
24 | **Plaintiffs Fail to State a Claim upon Which Relief Can Be Granted — Issue 4**
25 | Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.
26 | 1 - 42 and the related supporting evidence.
27 | / / /
28 | / / /

- 23 -

**FIFTH AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE COMPLAINT:**
Plaintiffs' Damages Were Caused by Their Comparative Fault and Negligence and That of
Their Agents — Issue 5

Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.
1 - 42 and the related supporting evidence.

**SIXTH AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE COMPLAINT:**
Plaintiffs' Damages Were Caused by the Supervening and Tortious Misconduct and
Negligence of Persons Other than Allstate — Issue 6

Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.
1 - 42 and the related supporting evidence.

**EIGHTH AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE COMPLAINT:**
Plaintiffs' Recovery Is Barred on the Ground That as to Each and Every Alleged Oral,
Implied or Other Contract Alleged Therein Between Allstate and Plaintiffs, There Has Been
a Failure of Conditions Precedent, Concurrent and Subsequent to the Enforcement of Such
Alleged Contract on the Part of Plaintiffs Thereby Excusing the Duty of Performance on the
Part of Allstate, If Any — Issue 7

Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.
1 - 42 and the related supporting evidence.

**TWELFTH AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE
COMPLAINT:** Plaintiffs' Recovery Is Barred on the Ground That as to Each and Every
Alleged Oral, Implied or Other Contract Alleged Therein Between Allstate and Plaintiffs,
There Has Been a Failure of Causation in such that the Alleged Damages Sought by
Plaintiffs Were Caused by an Excluded Risk-- Issue 8

Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.
1 - 42 and the related supporting evidence.

/ / /

/ / /

/ / /

Allstate's Statement of Uncontroverted Facts and Conclusions of Law in Support of its SJM

1  THIRTEENTH AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE

2  COMPLAINT: Plaintiffs' Recovery Is Barred By Their Failure to Fulfill Their Obligations

3  Under the "What You Must Do After a Loss" Provision of the Policy — Issue 9

4      Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.

5  1 - 42 and the related supporting evidence.

6  FIFTEENTH AFFIRMATIVE DEFENSE OF ALLSTATE'S ANSWER TO THE

7  COMPLAINT: Plaintiffs' Recovery Is Barred As a Result of Plaintiffs' Breach of the "Suit

8  Against Us" Provision of the Policy — Issue 10

9      Allstate hereby incorporates by reference as though fully set forth undisputed Facts Nos.

10  1 - 42 and the related supporting evidence.

12  ## CONCLUSIONS OF LAW

13  1.    Plaintiffs cannot state a prima facie case for breach of the implied covenant of good

14      faith and fair dealing.

15  2.    Plaintiffs cannot state a prima facie case for punitive damages.

16  3.    Plaintiffs cannot state a prima facie case for breach of contract.

17  4.    Plaintiffs' loss is excluded from coverage.

19  DATED: August 17, 2000        Respectfully submitted,

20          **MACGREGOR & BERTHEL**

22  By _R. Timothy O'Connor_

23          **R. Timothy O'Connor**
Attorneys for Defendant

24          **Allstate Insurance Company**

25  **IT IS SO ORDERED**

26  Dated _9/12/00_

27  _RONALD S W LEW_
**United States District Judge**

- 25 -

1

## PROOF OF SERVICE

2

3    STATE OF CALIFORNIA            )
                                    )    ss.
4    COUNTY OF LOS ANGELES          )

5

6         I, *Ed Fuchs*, am employed in the County of Los Angeles, State of
California.  I am over the age of eighteen (18) and am not a party to the within action; my
7    business address is 21700 Oxnard Street, Suite 1590, Woodland Hills, California 91367-3669.

8         On **August 18, 2000**, I served the foregoing document described as **DEFENDANT
ALLSTATE INSURANCE COMPANY'S STATEMENT OF UNCONTROVERTED FACTS**
9    **AND CONCLUSIONS OF LAW** on the interested parties in this action by placing a true copy
thereof enclosed in sealed envelopes addressed as follows:

10

**Philip Marchiondo, Esq.**
11   **Law Offices of Philip Marchiondo**
429 Santa Monica Boulevard, Suite 5500
12   Santa Monica, California 90401

13

[ X ]   **BY PERSONAL SERVICE**
14

15        I delivered such envelope by hand to the offices of the addressee(s) noted above.

16        Executed on August 18, 2000, at Woodland Hills, California.

17   [ X ]        **FEDERAL**    I declare that I am employed in the office of a member of the bar of
this Court at whose direction the service was made.
18

19

20                                  **Signature of Messenger**

21

22

23

24

25

26

27

28